**2016 BNH 011**     **Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                    Bk. No. 15-10663-BAH
                                                                          Chapter 13

Mark Edward Toronto, Sr.,
          Debtor


*Sandra A. Kuhn, Esq.*                          *Neil J. Reardon, Esq.*
*Family Legal Services, P.C.*                   *Hampstead, NH*
*Concord, NH*                                   *Attorney for Julie Toronto*
*Attorney for the Debtor*


### <u>MEMORANDUM OPINION</u>

## I. INTRODUCTION

     The matters before the Court are the Motion to Show Cause and For Sanctions Against

Julie Toronto for Violation of the Automatic Stay[1] (the "Motion for Sanctions") filed by Mark

Edward Toronto, Sr. (the "Debtor"); the Objection to Motion to Show Cause[2] filed by Julie

Toronto ("Ms. Toronto"), the Debtor's former spouse; and the Debtor's objection to her proof of

claim[3] (the "Objection to Claim").  The Debtor seeks damages against Ms. Toronto in light of

her failure to withdraw a petition for contempt filed in the Tenth Circuit Family Division (the

"Family Division") upon the filing of his bankruptcy petition, and disallowance of her claim as a

domestic support obligation.  The Court conducted an evidentiary hearing on these matters on

_____

[1] Doc. No. 29.

[2] Doc. No. 39.

[3] Doc. No. 66.

June 22, 2016, at which five exhibits were admitted into evidence and, by agreement of the parties, the Court accepted an offer of proof from each party in lieu of testimony. For the reasons set forth below, the Court will deny the Motion for Sanctions and overrule in part the Objection to Claim.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

## III. FACTS

The Debtor and Ms. Toronto were once married, but divorced prepetition, the Family Division having entered a final divorce decree on January 6, 2015 (the "Final Divorce Decree"). Several provisions of the Final Divorce Decree form the basis for Ms. Toronto's claim. First, the Family Division ordered that the family residence co-owned by the Debtor and Ms. Toronto and located at 8 Lesley Circle in Derry, New Hampshire (the "Property"), be placed on the market and sold.[4] In light of the Debtor's failure to remain current with the mortgage obligations during the pendency of the divorce proceedings as ordered, the Family Division awarded Ms. Toronto the first $23,000.00 of any net proceeds of the sale to account for the lost equity, with any "additional equity" divided equally between the Debtor and Ms. Toronto.[5] The Family Division further ordered:

---

[4] Final Divorce Decree, Ex. 3 at 6.

[5] Id.

> *As part of the property division in this case, within 20 days of the notice of this decree Mr. Toronto shall make a lump-sum payment to Ms. Toronto of $20,000.00 to enable Ms. Toronto to obtain a vehicle, or he shall provide her with a road-worthy vehicle comparable to the Honda that was utilized by Ms. Toronto during the marriage.* Mr. Toronto is AWARDED the 2004 Dodge truck, with an estimated value of $3,500.00, the Harley Davidson motorcycle, and the 2010 Honda. Although it was testified that title to the Honda was in the name of Mr. Toronto's mother, Ms. Toronto testified that, as a result of the family's financial issues, Mr. Toronto's mother was required to sign the lease for the vehicle. Until the car was taken by Mr. Toronto on October 31, 2013, the vehicle was garaged at the family's residence and treated as Ms. Toronto's car. It is the understanding of the Court that the lease payments made on the vehicle were made by the Torontos. . . .[6]

The award of $20,000.00 or a "comparable vehicle" was also referenced in the Family Division's denial of Ms. Toronto's request for alimony. Specifically, the Family Division found:

> *Ms. Toronto is in need of alimony.* She is currently unemployed and, as set forth above, during the marriage was basically not employed outside of the home. She lacks sufficient income and property to pay for her reasonable needs. The Court, however, does not find that Mr. Toronto is able to meet his reasonable needs while meeting those of Ms. Toronto. Even if the Court utilizes the gross income figure of $4,994.00 per month, the Court does not find that this will allow Mr. Toronto to meet his reasonable needs and pay alimony to Ms. Toronto. (RSA 458:19) The Court, therefore, makes no award of alimony.

> Ms. Toronto filed for divorce in September 2013. Mr. Toronto left the family residence in May of 2014. During this time, Ms. Toronto has made no efforts to seek employment outside of the home. She testified that there were no physical or mental health limitations on her finding work, but that she had been limited in seeking employment because she had no access to a vehicle. *She stated she could not commit to a job because she had no vehicle. As set forth above, Mr. Toronto, as part of this Final Decree, is ORDERED to provide Ms. Toronto with a vehicle comparable to the Honda that he has taken possession of, or to make a lump sum payment to her of $20,000.00, to enable her to obtain a vehicle.*[7]

Notably, the Family Division made similar findings about Ms. Toronto's work history and earning capacity in its allocation of the marital debt:

> Given that Ms. Toronto, with the exception of some part-time jobs bartending, and cleaning houses, has not worked during the marriage, and at the time of the

---

[6] Id. at 3 (emphasis added).

[7] Id. at 4 (emphasis added).

Hearing, remained unemployed; and given that Mr. Toronto has income of at least $4,996.00 per month, the Court finds that that allocation of the marital debt, as set forth in Paragraph 14 of the Final Decree, is warranted and equitable. Even when she becomes employed, Ms. Toronto's opportunity for the future acquisition of capital assets and income will be much less than that of Mr. Toronto. Therefore, Mr. Toronto will assume and be solely responsible for the outstanding balances owed to FairPoint (approximately $555.79); PSNH (initially $3,261.42, but significantly reduced at the time of Final Hearing); Dr. Collins ($5,500.00 less insurance payments); Parkland Medical ($300.00); HD Financial ($3,000.00) and Singing One RV (believed to be approximately $3,800.00), as it relates to the mobile home trailer, which is located in Laconia. As part of this Final Decree, the property at 200 Hilliard Road, Laconia, is AWARDED to Mark Toronto, Sr. (It is his position that there is no equity in the property.) Mr. Toronto will reimburse Ms. Toronto $250.00 for one-half of the sewer and septic bill (Pet. Ex. 2).[8]

Finally, the Family Division ordered the Debtor to pay to Ms. Toronto child support in the amount of $313.00 per week, and to maintain a life insurance policy in the minimum amount of $100,000.00 with Ms. Toronto designated as trustee for the benefit of their children.[9]

On April 27, 2015, the Debtor filed a voluntary Chapter 13 petition. On Schedule A – Real Property, the Debtor referenced Ms. Toronto's half interest in the Property, as well as the Family Division's award of the "first $22K in equity."[10] On Schedule E – Creditors Holding Unsecured Priority Claims, the Debtor listed a domestic support obligation to Ms. Toronto in the amount of $1,427.05. On Schedule F – Creditors Holding Unsecured Nonpriority Claims, he listed Ms. Toronto as holding a general unsecured claim in the amount of $20,000.00 on account of a "Dischargeable Property Settlement."[11]

On April 28, 2015, the day after the Debtor filed his petition, Ms. Toronto filed a petition for contempt (the "Petition for Contempt") in the Family Division seeking to enforce provisions of the Final Divorce Decree. The Petition for Contempt is not in the record before this Court and

---

[8] Id. at 6.

[9] Id. at 4, 7.

[10] Schedule A, Doc. No. 1.

[11] Schedule F, Doc. No. 1.

neither party clearly explained the parameters of the relief sought therein.  The Family Division scheduled the Petition for Contempt for a structuring conference on July 21, 2015.

Ms. Toronto asserts that she was unaware of the bankruptcy filing at the time she filed the Petition for Contempt.  Although the Debtor scheduled Ms. Toronto and properly listed her on the matrix of creditors, he could not say whether she was given advance notice of the filing. Thus, the Court concludes that it is more likely than not that Ms. Toronto was unaware of the Debtor's bankruptcy when she filed the Petition for Contempt.

Regardless, it is clear that Ms. Toronto had actual notice of the Debtor's bankruptcy case prior to the scheduled structuring conference in the Family Division.  On June 1, 2015, Ms. Toronto attended the meeting of creditors held pursuant to 11 U.S.C. § 341(a).  On June 26, 2015, she filed a proof of claim in the amount of $55,174.79, of which she asserted $23,000.00 was secured by real estate and $1,177.00 was entitled to priority treatment as a domestic support obligation.[12]

On July 6, 2015, the Debtor filed, *pro se*, a motion to continue the structuring conference, which the Family Division denied on July 17, 2015.  The docket entry for the order denying the Debtor's motion to continue states that the "[h]earing on 7/21/15 is for structuring conference where the matters in this motion can be discussed."[13]  On July 20, 2015, Attorney Sandra Kuhn, the Debtor's bankruptcy counsel, sent a letter to the Family Division informing it of the Debtor's bankruptcy and automatic stay, and opining that nearly all the issues raised by the Petition for Contempt were stayed (the "Letter").  The Letter states in pertinent part:

> From what we understand from the Debtor this Petition involves, for the most part, issues which are presently before the bankruptcy court. *The issues raised*

---

[12] See Claim No. 3-1.

[13] Ex. 2 at 7.

> *relative to life insurance do not have anything to do with his bankruptcy case and we believe that is the only issue for which the Court can proceed in this matter.*
>
> The Court should also note that Ms. Toronto has filed a claim in the Bankruptcy Court for the amount she believes Mr. Toronto owes her for a property settlement. A copy of that is attached. The stay would apply irrespective of her claim, but by submission of her claim she should already know this issue is appropriately before the Bankruptcy Court *continuation* [sic] *of this matter on anything other than the life insurance* [sic] *inappropriate and a violation of the automatic stay*.[14]

Notably, the Letter did not request cancellation of the hearing. To the contrary, the clear implication of the Letter is that the contempt proceedings related to the life insurance were not stayed by the Debtor's bankruptcy and could go forward in the Family Division. Ms. Toronto was also sent a copy of the Letter.

The Family Division held the structuring conference as scheduled on July 21, 2015, after which it entered an order scheduling the Petition for Contempt for a hearing on the merits on August 13, 2015. The record is devoid of any further information regarding the structuring conference, including whether the Debtor attended it. Based upon the parties' silence, the Court presumes that the structuring conference was true to name and did not involve any substantive discussions. On August 3, 2015, the Family Division returned the Letter to Attorney Kuhn, citing her lack of standing to file pleadings on the Debtor's behalf because she did not represent him in the contempt proceeding.[15]

On August 12, 2015, the day prior to the hearing on the Petition for Contempt in the Family Division, the Debtor filed the Motion for Sanctions. The Motion for Sanctions echoes the Letter, alleging that "continuation of the state court matter on anything other than the life insurance inappropriate [sic] and a violation of the automatic stay."[16]   Despite his

---

[14] Ex. 3 at 1 (emphasis added).

[15] Ex. 4.

[16] Motion for Sanctions, Doc. No. 29 at ¶ 7.

acknowledgment that the contempt proceeding would not be stayed as to any life insurance issues, the Debtor asserts that Ms. Toronto willfully violated the stay "[b]y not withdrawing her petition in the Derry Family Division."[17]  The Court notes that the Debtor did not ask this Court to confirm the applicability of the automatic stay or determine what matters could or could not proceed at the August 13, 2015 hearing in the Family Division.  Instead, the Motion for Sanctions requests "the Court hold a show cause hearing on said violation, find [Ms. Toronto] in contempt of the stay order [sic], order her to pay fees and costs and punitive damages."[18]  The Court scheduled the Motion for Sanctions for hearing on September 24, 2015.

The August 13, 2015 hearing went forward in the Family Division as scheduled with both Ms. Toronto and the Debtor in attendance.  The Family Division's Order regarding the Petition for Contempt/Motion for Contempt (the "Order on Contempt"), dated October 7, 2015, provides this record's sole account of the hearing with respect to the Petition for Contempt:

> At the Hearing, Ms. Toronto stated that she did not know that Mr. Toronto had filed for bankruptcy at the time she filed her Petition for Contempt.  Mr. Toronto stated to the Court that he had a bankruptcy action pending.  Subsequent to the August 13, 2015 Hearing, Mr. Toronto, on September 1, 2015, filed the documentation which established that he has a Chapter 13 Bankruptcy action pending in the U.S. Bankruptcy Court, District of New Hampshire, Bk. No. 15-10663-BAH.  Given this evidence, Ms. Toronto's Petition for Contempt is stayed, with the exception of the issue of life insurance.  At the Hearing on August 13, 2015, Ms. Toronto stated that the life insurance issue was resolved.[19]

It appears that after the Debtor informed the Family Division of his bankruptcy, the Family Division required him to provide evidence of his bankruptcy filing before it stayed the contempt proceeding.  At the hearing on the Motion for Sanctions, Ms. Toronto's counsel made an offer of proof, which the Debtor accepted, that Ms. Toronto never prosecuted the Petition for Contempt

---

[17] Id. at ¶ 9.

[18] Id. at ¶ 11.

[19] Ex. 5 at 1.

at the August 13, 2015 hearing, other than with respect to life insurance.  Although not mentioned by either party, the Family Division docket and the Order on Contempt reveal that the Debtor filed his own motion for contempt in the Family Division on July 6, 2015, seeking to enforce certain provisions of the Final Divorce Decree.  The Debtor's contempt motion was heard alongside Ms. Toronto's Petition for Contempt on August 13, 2015.[20]

Ms. Toronto filed her objection to the Motion for Sanctions on September 11, 2015, asserting that, notwithstanding her proof of claim, *all* the Debtor's obligations to her were in the nature of support and not subject to the stay.  The Motion for Sanctions was deemed a contested matter and scheduled for an evidentiary hearing.  On December 2, 2015, the Debtor filed the Objection to Claim, disputing that Ms. Toronto's claim was either secured or a domestic support obligation, and contending that it was instead merely a property settlement subject to discharge.  In light of the related issues, the Objection to Claim was scheduled jointly with the Motion for Sanctions.

After several continuances, the Court conducted an evidentiary hearing on June 22, 2016.  Initially, the Debtor represented that the parties had reached a stipulation with respect to all issues raised in the Objection to Claim except the characterization of the "replacement vehicle."  As the hearing progressed, however, that representation proved inaccurate.  While the Debtor conceded that $1,177.00 of Ms. Toronto's claim is a domestic support obligation entitled to priority treatment, there seemed little agreement with respect to the remainder of the claim.  Ms. Toronto continued to press her claim to the first $23,000.00 in the Property's net sale proceeds, but the dispute was tempered by the prospect that there will be no equity in the Property when it

---

[20] See Exs. 2, 5.

finally is sold.  In an attempt to clarify the record, the Court ordered the parties to file any stipulation by June 29, 2016, but no stipulation was ever filed.

The Debtor introduced five exhibits into evidence: (1) a Kelley Blue Book pricing report for a 2010 Honda (the "Pricing Report"); (2) the Family Division docket; (3) the Letter; (4) the Family Division's response to the letter; and (5) the Order on Contempt.  Exhibits 2 through 5 were offered in support of the Motion for Sanctions.  The Pricing Report, reflecting a trade-in value range of $4,756.00 to $6,151.00, was offered to establish that the value of the Honda was comparable to the value of the vehicles the Debtor was awarded in the Final Divorce Decree. The parties also referenced the Final Divorce Decree, which is attached to both Ms. Toronto's proof of claim and the Letter.

The Debtor accepts Ms. Toronto's assertion that she was unaware of his bankruptcy at the time she filed the Petition for Contempt, but takes issue with her failure to withdraw it upon receiving actual notice.  The Debtor asserts that he was forced to leave a family vacation with his children in order to attend the August 13, 2015 hearing in the Family Division, which Ms. Toronto did not dispute, citing a lack of contrary information.  Attorney Kuhn indicated that her fees with respect to litigating this matter are approximately $1,000.00, and estimated that the Debtor incurred additional damages in the amount of $5,000.00 on account of the alleged stay violation.

## IV. POSITIONS OF THE PARTIES

### A. The Debtor

As stated above, the Debtor argues that Ms. Toronto willfully violated the stay "[b]y not withdrawing her petition in the Derry Family Division" after becoming aware of the bankruptcy,

reasoning that "continuation of the state court matter on anything other than the life insurance [was] inappropriate and a violation of the automatic stay."[21]  As a result Ms. Toronto's willful violation, the Debtor asserts that he was forced to leave a family vacation to appear before the Family Division when there "shouldn't have been a hearing to begin with."  The Debtor seeks attorney's fees in the amount of $1,000.00 and damages in the amount of $5,000.00.

With respect to the Objection to Claim, the Debtor asserts that other than $1,177.00 in child support arrears, all amounts sought by Ms. Toronto arising under the Final Divorce Decree constitute a dischargeable property settlement.  He notes that the Family Division expressly did not award alimony, and further argues that all of the awards under the Final Divorce Decree, with the exception of child support, are lump sum payments that lack the usual characteristics of support.  Moreover, the Debtor posits that if the Family Division thought Ms. Toronto's claim constituted support, it would not have stayed the contempt proceeding.

The Debtor argues that In re Williams, No. 15-10056-BAH, 2016 WL 97488 (Bankr. D.N.H. Jan. 7, 2016), a recent case where this Court concluded a similar award of a replacement vehicle or $20,000.00 was a non-dischargeable domestic support obligation, is distinguishable in several respects.  First, he notes that the Family Division expressly described the award of $20,000.00 or a "comparable vehicle" "[a]s part of the property division in this case."[22]  Next, unlike the parties in Williams, who had a gross disparity of education and earning capacity, the Debtor contends that he and Ms. Toronto stand on relatively equal footing.  Moreover, the Debtor asserts that characterizing the award of a "comparable vehicle" as a property settlement is consistent with an equitable division of the vehicles, given that the value of the 2010 Honda was roughly equivalent to the value of the 2004 Dodge truck and Harley Davidson motorcycle that he

---

[21] Motion for Sanctions, Doc. No. 29 at ¶¶ 7, 9.
[22] Final Divorce Decree, Ex. 3 at 6.

was awarded.  He concedes, however, that this view requires the Court to ignore the alternative award of $20,000.00, which he urges the Court do because, in his opinion, the number was "picked out of nowhere."

B. Ms. Toronto

Ms. Toronto's position is that her claim, in its entirety, constitutes a domestic support obligation that is non-dischargeable and to which the automatic stay does not apply.  In particular, with respect to the award of $20,000.00 or a "comparable vehicle," she contends that it is in the nature of support because the intent of the Family Division was to provide her with transportation for herself and her children.  Ms. Toronto further notes that the 2010 Honda that she drove during the marriage was property of the Debtor's mother, and therefore not available for equitable division.

Ms. Toronto denies that she violated the automatic stay.  She asserts that she was unaware of the bankruptcy filing at the time she filed the Petition for Contempt, but nonetheless argues that she only went forward with matters to the extent they were excepted from the automatic stay.  Indeed, Ms. Toronto emphasizes that it is undisputed that she did not prosecute the Petition for Contempt at the August 13, 2015.  For these reasons, she asserts damages in any amount are unwarranted.

**V. DISCUSSION**

A. Motion for Sanctions

Section 362(a) of the Bankruptcy Code automatically stays a wide array of collection and enforcement proceedings against a debtor and his or her property.  See 11 U.S.C. § 362(a).  It has

been described "as one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986).  It is intended to serve the dual purpose of "giv[ing] the debtor breathing room, stopping all collections, foreclosures, and harassment," Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (internal quotations omitted), while simultaneously "ensur[ing] the right of similarly situated creditors to a uniform distribution of nonexempt assets."  In re Weber, 283 B.R. 630, 633 (Bankr. D. Mass. 2002) (citing In re Soares, 107 F.3d at 975).

Although the automatic stay is broad, it is not without limits.  For example, 11 U.S.C. § 362(b) excepts from the automatic stay certain domestic relations proceedings.[23]  Most relevant

---

[23] Specifically, 11 U.S.C. § 362(b) provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
>
> * * *
>
> (2) under subsection (a)—
>
> (A)  of the commencement or continuation of a civil action or proceeding—
>
> (i) for the establishment of paternity;
>
> (ii) for the establishment or modification of an order for domestic support obligations;
>
> (iii) concerning child custody or visitation;
>
> (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or
>
> (v) regarding domestic violence;
>
> (B) of the collection of a domestic support obligation from property that is not property of the estate;
>
> (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;
>
> (D) of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

to this case is 11 U.S.C. § 362(b)(2)(B), which excepts from the automatic "the collection of a domestic support obligation from property that is not property of the estate."  11 U.S.C. § 362(b)(2)(B).  As will be discussed in greater detail below, a domestic support obligation is generally one that is "in the nature of alimony, maintenance, or support."  11 U.S.C. § 101(14A)(B).  Thus, a collection activity violates the automatic stay unless it is both for an excepted domestic support obligation and seeks payment from a permissible source.

An individual injured by a willful violation of a stay is entitled to "recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).  The United States Court of Appeals for the First Circuit instructs that "the standard for a willful violation of the automatic stay . . . is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 269 (1st Cir.1999).  Thus, "[i]n cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate."  Id.  When seeking sanctions under 11 U.S.C. § 362(k), the Debtor bears the burden of proof to establish: (1) that there was a stay violation; (2) that violation was willful; (3) that the willful violation caused debtor to suffer harm and incur damages; and (4) what relief is appropriate.  Soto v. Lanoue (In re Soto), 302 B.R. 757, 759 (Bankr. D.N.H. 2003).

---

(E) of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

(F) of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

(G) of the enforcement of a medical obligation, as specified under title IV of the Social Security Act.

11 U.S.C. § 362(b)(2).

The Court finds the Debtor has not carried his burden in establishing he was harmed by a willful stay violation. The Debtor's central premise, that Ms. Toronto willfully violated the stay "[b]y not withdrawing her petition in the Derry Family Division,"[24] is immediately undercut by his own recognition that continuation of the contempt proceeding with respect to life insurance would not violate the stay.[25]  Moreover, the Debtor concedes that at least $1,177.00 of Ms. Toronto's claim constitutes child support, which is clearly a domestic support obligation. Accordingly, there was at least one, if not two, appropriate bases on which to move forward, rendering a complete withdrawal of the Petition for Contempt unnecessary and inappropriate.[26] While the Petition for Contempt *may* also have sought relief beyond the scope of 11 U.S.C. § 362(b)(2)(B)—no one offered the Petition for Contempt into evidence—allowing it to simply

---

[24] Motion for Sanctions, Doc. No. 29 at ¶ 7.

[25] An obligation to maintain a life insurance policy for the benefit of children pursuant to a divorce decree is a domestic support obligation.  See Perlis v. Perlis (In re Perlis), 467 B.R. 240, 244 (Bankr. N.D. Ga. 2012); Powell v. Shealey (In re Shealey), No. 05-10138-WHD, 2006 WL 6592071, at *1 (Bankr. N.D. Ga. Dec. 13, 2006); Klayman v. Klayman (In re Klayman), 234 B.R. 151, 153 (Bankr. M.D. Fla. 1999).  Depending on the facts and circumstances, life insurance premiums may be a necessary expense in Chapter 13.  Smith v. Spurgeon (In re Smith), 207 B.R. 888, 890 (B.A.P. 9th Cir. 1996); In re Husemann, No. 00-13511-JMD, 2001 WL 1757048, at *3 (Bankr. D.N.H. Sept. 4, 2001).  Where such premiums are paid pursuant to a domestic support obligation, there is little question that the premiums are necessary.  Therefore, the Debtor is correct and the automatic stay did not bar the enforcement his life insurance obligation.

[26] Contempt proceedings are a "collection" activity under 11 U.S.C. § 362(b)(2)(B), see In re Angelo, 480 B.R. 70, 90 (Bankr. D. Mass. 2012); In re Johnston, 321 B.R. 262, 275–78 (D. Ariz. 2005), and the Debtor does not argue otherwise.  The Court notes, however, there is a minority view that holds that contempt proceedings are not excepted from the stay under this subsection.  See In re Jenkins, No. 05-73127, 2011 WL 2619317, *9–11 (Bankr. N.D.N.Y. 2011); Brooks v. Brooks (In re Brooks), No. 03-3194, 2007 WL 540786, *3–4 (Bankr. E.D. Tenn. 2007); Lori v. Lori (In re Lori), 241 B.R. 353, 355 (Bankr. M.D. Pa. 1999).  These cases rely, without discussion, on a distinction once posited by the editors of Collier bankruptcy treatises between the words "collection," which they define as the mere passive receipt of payments, and "enforcement."  See Sommer & McGarity, Collier Family Law and the Bankruptcy Code, ¶ 5.03[3][b][iii] (Lexis Nexis ed. 2010); 3 Collier on Bankruptcy ¶ 362.05[2], at 362–51 (15th ed. rev. 1999).  While this discussion still appears in the Collier Family Law treatise, the editors of Collier on Bankruptcy have since abandoned this position.  See 3 Collier on Bankruptcy ¶ 362.05[2], at 362–57 (16th ed. rev. 2016) (noting that 11 U.S.C. § 362(b)(2)(B) "did not authorize, prior to the 2005 amendments, enforcement litigation against the debtor without relief from automatic stay").  Although courts must generally assume Congress uses different words to convey different meanings, it does not necessarily follow that those meanings cannot overlap.  Indeed, as recognized by the court in In re Angelo, 480 B.R. at 90, the automatic stay itself is actually a collection of eight overlapping stays to ensure no gap in coverage.  Thus, it would be contrary to the usual and ordinary meaning of the word "collect," and inconsistent with subparagraph (a), to read "collection" and "enforcement" as mutually exclusive.  Id.

remain pending in the Family Division was, at best, a harmless technical violation of the automatic stay.

In order for such a technical violation to have blossomed into sanctionable conduct, the Debtor must show that Ms. Toronto, with knowledge of the stay, pursued inappropriate relief in a manner that caused him to suffer damages.  The Debtor does not allege that he was harmed by the Family Division's July 21, 2015 structuring conference, and nor could he, as the record reflects that the hearing was non-substantive and there is no evidence that he even attended. Instead, the Debtor argues that he was harmed by having to attend the August 13, 2015 hearing. For several reasons, the Court concludes the Debtor suffered no harm and finds his assertions to the contrary disingenuous.

First, to the extent that the Debtor concedes that the Petition for Relief sought at least some relief that was excepted from the automatic stay, he cannot deny Ms. Toronto her right to a hearing as to those matters.  Second, the undisputed evidence is that Ms. Toronto never prosecuted the Petition for Contempt at the August 13, 2015 hearing with respect to any matter other than life insurance.  Indeed, the Family Division stayed the Petition for Contempt after the Debtor reported his bankruptcy filing.  To the extent that the Family Division subsequently required the Debtor to supply proof of his bankruptcy, the Court finds no harm or prejudice.[27] Finally, although this point was ignored by both parties, it is apparent from the Family Division docket and the Order on Contempt that the Debtor's own motion for contempt was also heard on August 13, 2015, meaning that the Debtor would have been required to attend the hearing even had Ms. Toronto's Petition for Contempt been withdrawn.  Therefore, the Debtor's claim that

---

[27] No explanation was offered as to why such documentation was not brought to the August 13, 2015 hearing in the first place.

Ms. Toronto's actions forced him to leave a family vacation and that there "shouldn't have been a hearing to begin with" is patently untrue.

For all these reasons, the Motion for Sanctions is wholly without merit. More troubling, however, is that its lack of merit should have been apparent to Attorney Kuhn long before this Court held an evidentiary hearing on June 22, 2016. As explained above, the observations as to the applicability of the stay contained within the Motion for Sanctions itself refute the appropriateness of the relief requested. Moreover, the Motion for Sanctions was filed prior to the August 13, 2015 hearing, which is notable in as much as the Debtor's alleged damage was having to "suffer" attendance of that hearing. Even assuming, *arguendo*, that there been a good faith basis to file the Motion for Sanctions at that time, as opposed to a motion simply seeking to confirm the applicability of the stay or requesting this Court to stay the contempt proceeding, it should have been clear by no later than October 7, 2015, that the Debtor ultimately suffered no damages.[28] Also of particular concern is the misleading offer of proof that the Debtor's damages arose from having been inappropriately forced to leave a family vacation to attend the August 13, 2015. While it may be true that the Debtor's vacation plans were inconvenienced by the Family Division's scheduling, the Debtor's attendance was mandated by his own motion for contempt, and it is both disingenuous and troublesome to lay the blame solely at Ms. Toronto's feet.

### B. Objection to Claim

In the present case, the Debtor does not contest his liability to Ms. Toronto or the amount of her claim, only its characterization. He contends that, with the exception of child support arrears in the amount of $1,177.00, Ms. Toronto is merely owed a property settlement, rather

---

[28] The Court further notes that because the Debtor was not represented in the contempt proceeding, the $1,000.00 in Attorney Kuhn's fees could only have been incurred needlessly pursuing the Motion for Sanctions.

than a domestic support obligation.  The difference is significant as domestic support obligations are non-dischargeable in bankruptcy, see 11 U.S.C. § 523(a)(5), entitled to first priority treatment, see 11 U.S.C. § 507(a)(1), and, in most Chapter 13 cases, must be paid in full.  See 11 U.S.C. § 1322(a)(2), (4).  In contrast, property settlements are generally treated as general unsecured claims and are dischargeable in Chapter 13 cases.  See 11 U.S.C. § 1328(a)(2).

The Bankruptcy Code defines a "domestic support obligation" as:

. . . a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).  Here, there is no dispute that the obligations arise from the Final Divorce Decree and are owed to the Debtor's former spouse, satisfying the requirements of 11 U.S.C. § 101(14A)(A), (C), and (D).  The only remaining question is whether the obligation is "in the nature of alimony, maintenance, or support."  11 U.S.C. § 101(14A)(B).  "This issue is one of federal bankruptcy law, and not state law," Smith v. Pritchett (In re Smith), 586 F.3d 69, 73 (1st Cir. 2009), and the Court is not bound by the labels used by the state court to describe the obligation.  Werthen v. Werthen (In re Werthen), 329 F.3d 269, 273 (1st Cir. 2003).

The United States Court of Appeals for the First Circuit has explained that "support payments are, roughly speaking, what is given to provide for the upkeep of the recipient spouse and children."  Id.  In determining whether an award is support or something else, the Court must discern "the intended purpose the obligation was meant to serve."  In re Smith, 586 F.3d at 74. The inquiry is fact intensive and depends on the totality of the circumstances.  Id.  The First Circuit has not adopted a specific rubric to discover intent, id., but this Court, like others within this circuit, has in the past informed its analysis by reference to the following factors:

> (1) language and substance of the state court's order and thus the characterization of the payment in the decree and the context in which the disputed provisions appear; (2) the parties' financial circumstances at the time of the order and thus whether the recipient spouse actually needed spousal support at the time of the divorce; (3) whether an assumption of a debt or creation of an obligation has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are met and to ensure a home for the former spouse and any minor children; (4) whether the parties intended to create an obligation of support; (5) the function served by the obligation at the time of such order; (6) whether the labels given to the payments of the parties may be looked at as evidence of the parties' intent; (7) whether there was an imbalance in the relative income of the parties at the time of the divorce decree and thus whether the payment appears to balance disparate income; (8) whether the obligation terminates on the death or remarriage of either spouse; (9) whether the payments are made directly to the recipient spouse in a lump sum [or] are paid in installments over a substantial period of time; (10) whether the payments are to be made directly to the former spouse or to a third party.

In re Williams, No. 15-10056, 2016 WL 97488, at *4 (Bankr. D.N.H. Jan. 7, 2016) (quoting In re Gambale, 512 B.R. 117, 123-24 (Bankr. D.N.H. 2014) and In re Efron, 495 B.R. 166 (Bankr. D.P.R. 2013) (collecting cases)); see also In re Werthen, 329 F.3d at 273 (recognizing that "courts look to a range of factors, including the language used by the divorce court and whether the award seems designed to assuage need, as discerned from the structure of the award and the financial circumstances of the recipients."). Ultimately, the claimant bears the burden of proving that the obligation is in the nature of support. In re Smith, 586 F.3d at 73 (citing In re Werthen, 329 F.3d at 271-72).

Before turning to the language of the Final Divorce Decree, the Court rejects the Debtor's contention that the Family Division found that Ms. Toronto's claim was a property settlement, as evidenced by it staying the contempt proceedings. Again, the Debtor undermines his own argument by conceding that at least $1,177.00 is a domestic support obligation. The argument is also flawed because the collection of a domestic support obligation is not excepted from the stay to the extent that there is no non-estate property from which to seek satisfaction. See 11 U.S.C. § 362(b)(2)(B) ("The filing of a petition . . . does not operate as a stay . . . of the collection of a domestic support obligation from property *that is not property of the estate*") (emphasis added). In other words, the inability to move forward with the contempt proceeding does not necessarily imply that Ms. Toronto's claim is not a domestic support obligation. Ultimately, the Family Division may have simply stayed the contempt proceeding out of an abundance of caution pending further instructions from this Court. In any event, the Family Division's stay is not dispositive of these issues.

The first point of dispute between the parties relates to the characterization of the award of $20,000.00 or a "comparable vehicle." This award first appears in a section of the Final

Divorce Decree titled "Automobiles."[29]   In that section, the Family Division explained that during the marriage, Ms. Toronto drove a 2010 Honda titled in the Debtor's mother's name. Upon their divorce filing, the Debtor took possession of the 2010 Honda and prevented Ms. Toronto's further use.  Recognizing the unavailability of the 2010 Honda, the Family Division ordered the Debtor to pay her a lump sum of "$20,000.00 to enable Ms. Toronto to obtain a vehicle, or . . . provide her with a road-worthy vehicle comparable to the Honda that was utilized by Ms. Toronto during the marriage."[30]

The Family Division's ruling with respect to alimony provides further insight into this award.  Based on the Debtor's gross income, the Family Division concluded that the Debtor was not capable of paying Ms. Toronto alimony while meeting his own reasonable needs. Nevertheless, the Family Division found that "Ms. Toronto is in need of alimony," noting that she was currently unemployed, "was basically not employed outside of the home" during the marriage, and "lacks sufficient income and property to pay for her reasonable needs."[31] Recognizing that the primary impediment to Ms. Toronto obtaining employment was her lack of access to a vehicle—"[s]he stated she could not commit to a job because she had no vehicle"— the Family Division then reiterated its order that Debtor "provide Ms. Toronto with a vehicle comparable to the Honda that he has taken possession of, or to make a lump sum payment to her of $20,000.00, to enable her to obtain a vehicle."[32]

Admittedly, the Family Division initially describes this award "[a]s part of the property division in this case" in the "Automobiles" section of the Final Divorce Decree, but there are a

---

[29] Final Divorce Decree, Ex. 3 at 3.

[30] Id.

[31] Id. at 4.

[32] Id.

number of reasons to suggest that label does not accurately reflect the Family Division's intent.[33] It is apparent that the purpose of the award of $20,000.00 or a "comparable vehicle" was not simply to divide property, but to provide Ms. Toronto a means of transportation.  The Family Division twice expressly stated the purpose of the award of $20,000.00 was "to enable Ms. Toronto to obtain a vehicle," making it, in the Family Division's view, the functional equivalent of supplying a "comparable vehicle."  If the cash award were simply a property settlement, as the Debtor contends, such qualification would have been unnecessary.  Moreover, the Family Division's findings with respect to alimony reveal that transportation was of concern because without it, Ms. Toronto could not secure employment and income to pay for her ongoing reasonable needs.  The fact that the Family Division reiterated the award already granted in the "Automobiles" section of the Final Divorce Decree after recognizing Ms. Toronto's unfulfilled need for alimony and weak financial status strongly indicates a causal link between the award and her ability to support herself.

The issue presented is similar to In re Williams, a recent case in which the Court held that the debtor's obligation pursuant to a divorce decree to pay his former spouse $20,000.00 for the purchase a replacement vehicle was "in the nature of alimony, maintenance, or support" within the meaning of § 101(14A)(B).  2016 WL 97488, at *7.  The Court reached this conclusion based upon the state court's emphasis on the vast economic disparity between the debtor and his ex-wife and her need to maintain employment.  Id. at *5-7.  During the marriage, the debtor was employed as a professor at two universities and earned an average of $96,528.00 per year, while his ex-wife, a sponsored immigrant with the Chinese equivalent of a G.E.D. and little ability to speak English, earned only about $20,000.00 per year as a full-time laborer.  Id. at *2.  Upon

---

[33] Id. at 6.

their separation, the debtor's ex-wife and her young daughter were forced into a shelter environment and received food stamps.  Id.  Recognizing the state court's stated purpose of the award was to enable her to travel for work, the Court reasoned that the award was in the nature of support:

> The $20,000 serves in substance as transportation support, which the State Court found Ya Cai [the debtor's former spouse] needed at the time of the divorce, given the economic disparity between the couple and Ya Cai's extremely limited financial resources. The effect of the two awards, i.e. the continued payments on the Mazda and the $20,000 to buy a replacement vehicle, was to "assuage need," Werthen, 329 F.3d at 273, and to enable Ya Cai to maintain "a basic or reasonable livelihood," Smith, 398 B.R. at 723.

Id. at *6.

In an attempt to avoid the same result as In re Williams, the Debtor argues that this case is factually distinguishable because the Debtor and Ms. Toronto are financially equal.  While the Court agrees that the parties are not as economically disparate as the parties in In re Williams, the assertion that they are equals is contrary to the Family Division's express finding that "[e]ven when she becomes employed, Ms. Toronto's opportunity for the future acquisition of capital assets and income will be much less than that of Mr. Toronto."[34]  Moreover, the Court notes that unlike the ex-wife in In re Williams, Ms. Toronto was not awarded alimony, see id. at *2, meaning that Ms. Toronto's subsistence is entirely dependent on securing gainful employment, which the Family Division found required access to a vehicle.

Notwithstanding these facts, the Debtor maintains that the award of $20,000.00 or a "comparable vehicle" is a property settlement.  In support, the Debtor argues that the value of the 2010 Honda is roughly equivalent to that of the 2004 Dodge truck and the Harley Davidson motorcycle that the Debtor was awarded.  The obvious problem with this argument is that neither the 2010 Honda nor 2004 Dodge Truck and Harley Davidson motorcycle are equivalent to an

---

[34] Final Divorce Decree, Ex. 3 at 6.

22

award of $20,000.00.  Curiously, the Debtor asserts, without elaboration, that the difference in value of Ms. Toronto's alternate awards supports his position.  At the same time, however, the Debtor urges the Court to ignore the award of $20,000.00, opining that the figure is essentially meaningless.  Of course, the Court is not free to ignore the lump-sum award, and must consider it in context with the alternate award of a "comparable vehicle" to determine their intended purpose.

Under the totality of the circumstances, the Court concludes that the intended purpose of the award of $20,000.00 or a "comparable vehicle" is to provide the functional equivalent of ongoing transportation assistance.  The Family Division found that without such assistance, Ms. Toronto is unable to commit to employment and thus, cannot provide a reasonable livelihood for herself or her children.  Particularly given that the Family Division recognized her need for alimony before reiterating the award of $20,000.00 or a "comparable vehicle," the Court finds that the award is directed towards assuaging that need despite—or because of—the Family Division's inability to award her alimony.  Accordingly, the award of $20,000.00 or a "comparable vehicle" is a domestic support obligation within the meaning of 11 U.S.C. § 101(14A)(B).

The next portion of Ms. Toronto's claim that is subject to dispute is the division of debt, whereby the Family Division ordered the Debtor to be solely responsible for approximately $13,667.21 of the marital debt.[35]  The Court notes that while Ms. Toronto did not initially assert that this amount was entitled to priority treatment in her proof of claim, she raised this argument

---

[35] Specifically, the Family Division ordered him to "assume and be solely responsible for the outstanding balances owed to FairPoint (approximately $555.79); PSNH (initially $3,261.42, but significantly reduced at the time of Final Hearing); Dr. Collins ($5,500.00 less insurance payments); Parkland Medical ($300.00); HD Financial ($3,000.00) and Singing One RV (believed to be approximately $3,800.00), as it relates to the mobile home trailer, which is located in Laconia. . . .  Mr. Toronto will reimburse Ms. Toronto $250.00 for one-half of the sewer and septic bill." Final Divorce Decree, Ex. 3 at 6.

in her objection to the Motion for Sanctions.  Like the rest, the Debtor contends this portion of Ms. Toronto's claim is merely a property settlement.

Notably, in dividing the debt, the Family Division emphasized the economic disparity between the Debtor and Ms. Toronto, comparing Ms. Toronto's current financial condition, past employment, and future earning capacity to that of the Debtor.  Specifically, the Family Division found:

> Given that Ms. Toronto, with the exception of some part-time jobs bartending, and cleaning houses, has not worked during the marriage, and at the time of the Hearing, remained unemployed; and given that Mr. Toronto has income of at least $4,996.00 per month, the Court finds that that allocation of the marital debt, as set forth in Paragraph 14 of the Final Decree, is warranted and equitable. Even when she becomes employed, Ms. Toronto's opportunity for the future acquisition of capital assets and income will be much less than that of Mr. Toronto.[36]

The fact that the Family Division considered the past, current, and future income of the parties indicates that it viewed the debt in question as not simply a onetime payment, but, based on their limited financial means, an ongoing installment payment obligation. Therefore, to the extent that the Family Division referenced Ms. Toronto's future acquisition opportunities, it suggests that the Family Division was considering Ms. Toronto's capacity to support herself while equitably distributing the marital debt.  As similar considerations were raised in the "Alimony" section of the Final Divorce Decree where the Family Division expressly found that Ms. Toronto was in need, the Court concludes that the division of debt served "to balance disparate income," at least until the debt was retired, given the clear "imbalance in the relative income of the parties at the time of the divorce decree."    In re Efron, 495 B.R. at 176.  Therefore, the Court finds

---

[36] Id. at 6.

that the division of debt under the Final Divorce Decree was intended as support, and is a domestic support obligation under 11 U.S.C. § 101(14A)(B).

The final portion of Ms. Toronto's claim relates to the award of the first $23,000.00 of any net proceeds from the sale the Property. The purpose of this award was to compensate her for the loss of equity in the (jointly owned) Property that occurred due to the Debtor having failed to make the mortgage payments as ordered. The award is clearly not support, and Ms. Toronto does not claim otherwise. Instead, she asserts that it is a secured claim, which the Debtor disputes. As the parties agree that there is likely no unencumbered equity in the Property, the proper characterization of the award is largely academic. Ultimately, for purposes of the Objection to Claim it is enough to say that the award is unquestionably *in rem*, such that the Debtor has no *in personam* liability to Ms. Toronto. Accordingly, the award of the first $23,000.00 of any net proceeds from the sale the Property is not an allowable claim against the Debtor personally, let alone a domestic support obligation.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the Debtor was not damaged by a willful violation of the automatic stay and his Motion for Sanctions must be denied. Additionally, the Debtor's Objection to Claim must be overruled to the extent that the Court concludes that Ms. Toronto's claim—with the exception of the award of the first $23,000.00 in net proceeds from the sale of the Property which is not an *in personam* claim against the Debtor—constitutes a domestic support obligation entitled to priority treatment. The Objection to Claim is sustained in part to the extent that Ms. Toronto does not hold a claim against the

Debtor secured by property, but simply a claim to property. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Dated: September 2, 2016    /s/ Bruce A. Harwood
            Bruce A. Harwood
            Chief Bankruptcy Judge